UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Holly Longley, *Plaintiff*, v. Abbott Laboratories and Kimberly Bissing *Defendant*. | No. 24 CV 9320 Judge Lindsay C. Jenkins |

MEMORANDUM OPINION AND ORDER

Holly Longley brings a motion requesting an adverse inference instruction based on alleged spoilation of evidence. [Dkt. 47.][1] Abbott Laboratories and Kimberly Bissing, in turn, move for sanctions asserting that Longley produced a fraudulent document in response to a discovery request. [Dkt. 50.] Both motions are denied.

I.  Background

Holly Longley began working for Abbott Laboratories in March 2000 as a secretary. [Dkt. 30, ¶ 6.] She was promoted to Client Services Manager in October 2021 and began reporting to Kimberly Bissing. [*Id.*, ¶ 7.] According to Longley, her generally positive relationship with Bissing took a turn in 2023 when Bissing began exhibiting "anger and hostility" toward her "in the form of verbal and written harassment." [*Id.*, ¶ 8.] Despite attempts to mediate, the harassment got progressively worse and caused Longley significant emotional distress. [*Id.*, ¶¶ 11–15.] Longley continued to report Bissing's harassment and sought other positions in the company throughout 2024. [*Id.*, ¶¶ 15–23.]

At a meeting on May 3, 2024, Bissing terminated Longley's employment, citing deficiencies in her "leadership competencies." [*Id.*, ¶ 24.] During the meeting, Longley "mentioned that [the termination] was age discrimination"—a point Bissing relayed in a post-meeting email to Abbott's Employee Relations personnel. [Dkt. 47 at 1–2.] After the meeting, Longley was immediately escorted off the property without permission to gather her personal items from her desk or log out of her accounts on the company laptop. [Dkt. 30, ¶ 24.]

---

[1] Citations to docket filings generally refer to the electronic pagination provided by CM/ECF, which may not be consistent with page numbers in the underlying documents.

1

### A. Longley's Laptop

While it's not typical for a supervisor to take a terminated employee's laptop to their personal residence, Bissing brought Longley's company laptop home with her the night of Longley's termination and held on to it until May 8 when Abbott's Business Technology Services department took possession. [Dkt. 47 at 2; Dkt. 55 at 2.] On June 11, Longley's attorney contacted Abbott's human resources department requesting copies of her personnel file pursuant to the Illinois Personnel Records Review Act. [Dkt. 47 at 2.] Abbott's internal counsel replied to the email to confirm receipt. [*Id.*] On June 13, Abbott's Business Technology Services department erased the contents of Longley's company laptop without preserving the data or hard drive. [*Id.*]

A few weeks later, on June 27, Abbott provided Longley's attorney with her personnel file. [*Id.*] And on August 14, Longley's attorney sent Abbott a demand email, attaching a draft complaint which included claims for violations of the Stored Communications Act and the Computer Fraud and Abuse Act and a claim for intentional infliction of emotional distress. [Dkt. 55 at 2.] The next day, Abbott issued a litigation hold related to Longley. [*Id.*] Longley filed her complaint in federal court on October 2, though it did not allege employment discrimination. [Dkt. 47 at 2–3.]

Throughout the discovery period, Longley made several discovery requests seeking the data stored on her company laptop. [*Id.* at 3.] Abbott did not inform Longley of the possibility that her laptop had been erased until October 2025 and didn't confirm its erasure until November 26, 2025. [*Id.*] Between August and October 2025, however, the parties regularly communicated about the discovery request and clarified its exact meaning. [Dkt. 55 at 13–14.]

### B. Longley's Tampering Evidence

Longley alleges that, on the night of her termination, she logged into her personal email account from her personal device and discovered that her company laptop had been used to sign in to her personal email account without her authorization. [Dkt. 50 at 2.] In response to a discovery request, Longley produced evidence to support her allegation: a document entitled "Personal Email Tampering Evidence." [*Id.*] The document displays various screenshots that appear to be pasted onto a single page, each labeled with text presumably written by Longley. [Dkt. 50-2.]

As relevant here, the first screenshot is described as "Devices linked/accessible to my personal email & Successful Log in. Work pc name is CSGULCL8...." [*Id.*] The screenshot shows two devices associated with her account, one named Hollys (her personal device) and another named CSGULCL8D0GQN. [*Id.*][2] According to Longley, the name of the company laptop she was using at the time of her termination was CSGULCL8D0GQN. [Dkt. 56 at 5.] Below the device names is a separate screenshot that displays the date and time, May 3, 2024 at 12:11 PM, of a "successful sign-in." [*Id.*][3] And below the date and time is a map that displays Waukegan, the city where Longley's office was located. [*Id.*; Dkt. 57 at 6.]



In response, Abbott presents evidence that Longley's company laptop at the time of her termination was not named CSGULCL8D0GQN. It provides documentation demonstrating that in May 2023, Longley requested a replacement laptop because the company laptop she was using at the time, CSGULCL8D0GQN, was held together with tape. [Dkt. 57-1 at 5–14.] The documents indicate that, in response to her request, Abbott replaced that laptop with one named USL00GLFF5X3LS, issued to "User Holly Longley" on May 11, 2023. [*Id.*; Dkt. 57-2

---

[2] In response to Abbott's motion for sanctions, Longley provided an additional screenshot of her laptop display, which demonstrated that her screenshot of the laptop names was taken on May 4, 2024, the day after her termination. [Dkt. 56-2 at 8.] She asserts that the reason she did not provide the individual, original screenshots earlier (rather than the document she pasted the screenshots onto) was because she was unaware that they were individually saved to her laptop. [Dkt. 56 at 2, n.1.]

[3] As Abbott highlights in its reply, dkt. 57 at 5–7, Longley's "Personal Email Tampering Evidence" suggests that the image of the device names, date/time, and location are all one screenshot. But as Longley now acknowledges, they are separate screenshots pasted in a (perhaps misleading) way that makes them appear to be one. [Dkt. 56-2 at 8.] Because Longley only provided the individual screenshot of the device names image, it remains unclear whether the time/date and location images are one screenshot or multiple.

at 7–10; Dkt. 50-3 at 6.] Off-boarding documentation also suggests that the company laptop Longley was in possession of at the time of her termination was USL00GLFF5X3LS. [Dkt. 50-3 at 8; Dkt. 57-2 at 24–30.]

According to a declaration from an Abbott Desktop Technician, PCs like CSGULCL8D0GQN were no longer under warranty at the time Longley requested a replacement so the laptop would have been "retired" once returned to Abbott, "meaning wiped of data and taken out of circulation following the issuance of a replacement laptop" to Longley. [Dkt. 50-3 at 3.]

Longley, for her part, asserts that she received the laptop named CSGULCL8D0GQN in late 2021 or early 2022 and never received another Abbott-issued laptop after that date. [Dkt. 56 at 5.] That is, she maintains that she never received a company laptop named USL00GLFF5X3LS in May 2023. [*Id.*]⁴

## II. Motion for Adverse Inference

Asserting that Abbott erased the contents of her company laptop to destroy evidence supporting her claims, Longley requests an adverse inference instruction or other curative measures. [Dkt. 55.]

Rule 37(a) provides an avenue for relief when a litigant believes the opposing party failed to preserve relevant electronically stored information (ESI). Fed. R. Civ. P. 37(e). The party aiming to make use of the rule must show by a preponderance of the evidence that: (1) the ESI should have been preserved in anticipation of litigation, (2) the ESI is lost because a party failed to preserve it, (3) the electronically stored information cannot be restored or replaced through additional discovery, and (4) the party seeking the lost ESI is prejudiced by its absence. *Id.*; see *Ramirez v. T&H Lemont, Inc.*, 845 F.3d 772, 781 (7th Cir. 2016) ("In civil cases, the facts underlying a district court's decision to dismiss the suit or enter a default judgment as a sanction under Rule 37 or the court's inherent authority need only be established by a preponderance of the evidence.").

If these five requirements are met, the court may "order measures no greater than necessary to cure the prejudice." Fed. R. Civ. P. 37(e). Certain measures, such as an adverse inference instruction, are subject to a heightened standard: the moving party must show that the opposing party "acted with intent to deprive another party of the information's use in the litigation." *Id.* Longley has not met either standard here.

Start with whether Abbott had a duty to preserve based on anticipated litigation. Longley points to two instances she thinks sufficient to trigger that duty.

---

⁴ Longley made these contentions in her response to Abbott's motion for sanctions. The court notes that Abbott provided additional evidence of the laptop replacement in its reply brief that Longley has not had an opportunity to respond to.

*First*, the comment she made about age discrimination during her termination meeting. *Second*, the email her attorney sent to Abbott's human resources department requesting her personnel file.

In this circuit, a party has a duty to preserve evidence once "he knew, or should have known, that litigation was imminent." *Fitzpatrick v. Nys*, 861 F. App'x 108, 110 (7th Cir. 2021). Neither Longley's stray comment at the time of her termination nor her attorney's general request for personnel records raise the sense of imminence required here. The "mere knowledge of the possibility of litigation does not create a duty to preserve evidence. There is a difference between anticipating or contemplating litigation – which triggers a duty to preserve – and the potential for litigation – which does not." *Malhotra v. CVS Health, Inc.*, 2025 WL 2083689, at *8 (N.D. Ill. May 15, 2025) (cleaned up).

And even if Longley's comment or her attorney's email led Abbott to believe she planned to file a lawsuit, it could not have anticipated the claims she raises in her complaint. A comment about age discrimination and a request for a personnel file are indicative of an employment discrimination suit, not violations of the Stored Communications Act or the Computer Fraud and Abuse Act. And a party's duty to preserve is limited in scope by the nature of the notice. *Diagnostic Health Servs., Inc. v. Tucker*, 2008 WL 11624345, at *2 (N.D. Ill. Jan. 30, 2008) ("Though a party does not have to go to extraordinary measures to preserve all potential evidence or preserve every single scrap of paper in its business, it does have to preserve evidence which the party has notice is reasonably likely to be the subject of a discovery request, even before such a discovery request is actually received.")

Further dooming her request for an adverse inference instruction, Longley has not demonstrated that Abbott erased the contents of her laptop with the specific intent to destroy evidence relevant to her case. She says the timing of its erasure—two days after her attorney requested her personnel file—is suspicious and went against Abbott's own retention policies. But the retention policies she points to do not seem to encompass the type of data erased from her company laptop. [Dkt. 47-7; Dkt. 55 at 11 (explaining that the Information Technology and Legal Compliance retention policies do not apply to data from physical laptops unless those laptops are under a legal hold)].[5]

The timing, on its own, is also not enough to raise an inference of bad faith. For one, nothing in the record suggests that the person who erased the data from Longley's laptop had any awareness of her departing comments or attorney's request. See *In re Text Messaging Antitrust Litig.*, 782 F.3d 867, 873 (7th Cir. 2015) ("Nor can a subordinate employee's destruction of a document, even if in violation of company

---

[5] According to Longley, Abbott did not produce the specific retention policy relied on in its response. [Dkt. 58 at 5.] Because the court does not rely on the policy in declining to issue an adverse inference, it does not resolve the discovery dispute at this time.

policy, be automatically equated to a bad-faith act by the company."). For another, it would make little sense for Abbott to erase the contents of her laptop but leave her entire personnel record intact. Indeed, it's unclear, and Longley does not explain, what evidence supporting an age discrimination claim could be found *only* on her company laptop.

On a similar note, Longley doesn't indicate what information relevant to her computer fraud/privacy claims would have been recoverable *only* on her company laptop. The screenshots she produced in discovery seem to show which devices accessed her email account at certain times, and presumably this information is also discoverable from the email account itself. See Fed. R. Civ. P. 37 (providing for curative measures only if ESI "cannot be restored or replaced through additional discovery").

A final point: even if Longley had demonstrated that Abbott erased the contents of her company laptop to destroy evidence supporting an age discrimination claim, the court would still not permit an adverse inference instruction. The Seventh Circuit has explained that "bad faith requires destruction for the purpose of hiding adverse information." *Bracey v. Grondin*, 712 F.3d 1012, 1019 (7th Cir. 2013). "[T]he crucial element is not that evidence was destroyed but rather the reason for the destruction." *Faas v. Sears, Roebuck & Co.*, 532 F.3d 633, 644 (7th Cir. 2008).

Applying those principles here, if the court found that the reason Abbott destroyed the laptop was because it contained evidence of employment discrimination, that would not, in turn, raise an inference that the laptop contained evidence of violations of the Stored Communications Act or the Computer Fraud and Abuse Act. So an instruction directing the jury to make such an inference would be inappropriate.

The court reserves ruling on whether evidence about the laptop's erasure is admissible until closer to trial.

### III. Motion for Sanctions

Abbott filed a motion for sanctions, contending that Longley manufactured evidence and provided false testimony to support her claims. [Dkt. 50.] Specifically, the company avers that Longley must have forged the "Personal Email Tampering Evidence" document because the screenshots suggest that an out-of-commission laptop accessed Longley's personal email account. Longley then doubled down on the falsified documents, Abbott says, by continuing to assert in her deposition and filings that someone used the out-of-commission laptop to access her email without her permission. And according to Abbott, Longley also perjured herself in her response to the motion for sanctions by avowing that she never received the laptop assigned to her at the time of her termination. [Dkt. 57.]

Courts have inherent authority to "fashion an appropriate sanction for conduct which abuses the judicial process." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44–45 (1991). While outright dismissal of a lawsuit is a "particularly severe sanction," fraud upon the court is particularly severe conduct—it "involves far more than an injury to a single litigant. It is a wrong against the institutions set up to protect and safeguard the public." *Id.* And the Supreme Court has emphasized that "the most severe in the spectrum of sanctions provided by statute or rule must be available to the district court in appropriate cases, not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent." *Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 643 (1976); see *Neal v. LaRiva*, 765 F.3d 788, 790 (7th Cir. 2014) ("[T]he judicial system cannot tolerate deception from litigants.").

After considering the evidence and arguments on both sides, the court declines to issue sanctions. It's true that Longley's "Personal Email Tampering Evidence" raises some eyebrows. It certainly appears that she arranged the screenshots in a manner meant to imply that the time, date, location, and device names were all displayed on her screen at once. And, as Abbott points out in its reply, she reinforced that impression in her deposition, referring to all the images collectively as the first screenshot. [Dkt. 57 at 6.]

But this isn't the type of egregious dishonesty or fraudulent conduct that has compelled courts to dismiss lawsuits in the past. See, *e.g.*, *Jimenez v. Madison Area Tech. Coll.*, 321 F.3d 652, 657 (7th Cir. 2003) (affirming district court's dismissal when litigant forged several documents, including emails and letters); *Fulks v. Watson*, 88 F.4th 1202, 1207 (7th Cir. 2023) (affirming district court's dismissal when prisoner forged a grievance); *Gottlieb v. Adtalem Glob. Educ.*, 2025 WL 3539213, at *1 (N.D. Ill. Dec. 10, 2025) (issuing show cause order when litigant filed a fraudulent letter from a government agency).

Longley also gets the benefit of the doubt. While the evidence presented by Abbott supports its assertion that Longley's laptop at the time of her termination was

7

named USLC00GLFF5X3LS, it's possible that Longley innocently confused the date of when she received a replacement laptop or mistakenly but genuinely believed her laptop was named CSGULCL8D0GQN. The court is also unconvinced that Longley manipulated the actual content of the screenshot—it seems plausible that her old company laptop could still be listed as a device linked to her email account.

So while the court declines its request for sanctions, Abbott is, of course, free to challenge Longley's assertions and inconsistencies on cross-examination.

### IV. Conclusion

Abbott's motion for sanctions and Longley's motion for an adverse inference are both denied.

Enter: 24-cv-9320
Date: February 5, 2026

_____
Lindsay C. Jenkins